**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TODD FRANCE,** | : | |
| **Plaintiff and Petitioner** | : | **No. 1:25-cv-00192** |
| | : | |
| **v.** | : | **(Judge Kane)** |
| | : | |
| **JASON BERNSTEIN,** | : | |
| **Defendant and Respondent** | : | |

**<u>MEMORANDUM</u>**

Presently before the Court are: (1) Petitioner Todd France ("France")'s motion to vacate or modify the award entered in the National Football Players Association ("NFLPA") arbitration captioned <u>Bernstein v. France</u>, NFLPA 23-CA-3 (Doc. No. 6); (2) France's motion to conduct limited discovery (Doc. No. 56); and (3) Respondent Jason Bernstein ("Bernstein")'s motion for judgment on the pleadings as to Counts Four and Five of France's complaint (Doc. No. 57).   For the reasons stated herein, the Court will grant Bernstein's motion and deny France's motions.

## I.    BACKGROUND

 The extensive factual and procedural history of this case is well known to the parties, and is therefore addressed here only as relevant to the instant motions.

### A.    First Arbitration Proceeding

The United States Court of Appeals for the Third Circuit ("Third Circuit") provided a brief overview of the factual basis of this case:

> Bernstein and France are certified contract advisors (more commonly referred to as agents) registered with the National Football League Players Association ("NFLPA").  They each represent NFL players in contract negotiations with NFL teams and in related matters.  Bernstein is also the majority owner of [Plaintiff Clarity Sports], which advises and represents professional athletes in matters other than their playing contracts, such as marketing and endorsement contracts. France, meanwhile, worked for the agency [CAA] during the period relevant to this case. As agents for NFL players, Bernstein and France must comply with the NFLPA

Regulations Governing Contract Advisors ("the NFLPA Regulations"), which are a product of the collective bargaining agreement the players have with the NFL and its constituent teams.

Bernstein's roster of clients used to include Kenny Golladay, a wide receiver who signed a standard representation agreement ["SRA"] with Bernstein in late 2016, before Golladay's rookie season with the Detroit Lions in 2017. Golladay simultaneously signed a separate agreement with Bernstein's Clarity Sports for representation in endorsement and marketing deals ["EMA"]. Under those contracts, Bernstein and Clarity Sports were Golladay's exclusive representatives. As required by the NFLPA Regulations, the contracts were filed with the NFLPA.

That agency relationship ended on January 29, 2019, when Golladay terminated both agreements. Break-ups are seldom happy affairs, but Golladay's goodbye was particularly troubling to Bernstein because, three days earlier, Golladay had participated in an autograph-signing event in Chicago that Bernstein had played no role in arranging—even though setting up such publicity and money-making opportunities for Golladay was precisely what Bernstein and Clarity Sports were hired to do. Bernstein became aware of the event, but only because he saw a Facebook post from one of the three [Memorabilia Defendants] promoting it. Once Golladay's agreements with Bernstein and Clarity Sports were terminated, Golladay immediately signed with France. Bernstein soon came to believe that France and his colleagues from CAA Sports were behind the [S]igning [E]vent the whole time.

See France v. Bernstein, 43 F.4th 367, 371 (3d Cir. 2022) (footnotes omittedBernstein also filed a grievance against France for violations of the NFLPA Regulations (hereafter the "Regulations"), which resulted in an arbitration before Roger P. Kaplan, Esquire (the "Arbitrator") in November and December of 2019 during which the Arbitrator found in favor of France.[1]  See France, 43 F.4th at 374.  France filed a petition to confirm the award in the United

---

[1] Bernstein's grievance stated that France had initiated contact with Bernstein's client, Golladay, and arranged an autograph-signing event for Golladay (the "Signing Event").  See France v. Bernstein, 43 F.4th at 371.  Bernstein claimed that the proceeds from the event had been used to induce Golladay to terminate his relationship with Bernstein and sign with France.  See id. France denied any involvement in Golladay's participation at the Signing Event.  See id. at 372. Due to information withheld prior to the arbitration hearing (which was the subject of a motion for sanctions in the related case of Clarity Sports), Bernstein was unable to meet his burden of

States District Court for the Eastern District of Virginia (hereafter the "Eastern District of

Virginia") (the site of the arbitration). See id. at 375.  Against this factual background, Bernstein

filed suit in this Court.  See Clarity Sports Int'l LLC v. Redland Sports, 1:19-cv-00305 (M.D. Pa.

filed Feb. 22, 2019) (hereafter "Clarity Sports").  Through discovery in Clarity Sports, evidence

was produced showing that France had been involved in the Signing Event, contrary to his

former deposition and testimony during the arbitration.  See id. at 374–75.  Bernstein cross-

moved to vacate France's award, relying on the newly discovered evidence.  See id. at 375.  The

petition for confirmation of the award was transferred to this Court, and the Court confirmed the

award and denied reconsideration.  See id. at 375–77.[2]  Bernstein timely appealed to Third

Circuit.  See id. at 377.  The Third Circuit reversed and remanded to this Court for entry of an

order vacating the arbitration award, finding that the arbitration award was procured by fraud,

and stating that:

> [i]t turns out that France did indeed have crucial evidence that should have been
> available to Bernstein . . . .  While pursuing his NFLPA grievance against France,
> Bernstein, along with Clarity Sports, was also litigating a case (the "Parallel
> Action") in the U.S. District Court for the Middle District of Pennsylvania against
> CAA Sports and the three sports memorabilia dealers involved in the signing event.
> The suit alleged tortious interference with contractual relationships.  See Third
> Amended Complaint, Clarity Sports Int'l LLC v. CAA Sports LLC, No. 1:19-cv-
> 00305-YK-SES (M.D. Pa. July 17, 2020), ECF No. 120.  Discovery in that suit
> yielded information pertinent to the grievance against France.  The problem for
> Bernstein was that the information did not surface until June 2020, roughly two
> months after the arbitrator's decision denying the grievance.  Bernstein had asked
> the arbitrator for an extension to file a post-hearing brief in light of the then-
> anticipated evidence from the Parallel Action, but the arbitrator denied that request.
>
> The newly revealed evidence showed that France was in fact involved with the
> autograph-signing event.  His involvement was at least implied in an interrogatory
> response from one of the memorabilia dealers, who said that one of France's

---

proof because he lacked evidence to counter France's testimony.  See id. at 373.  The arbitrator
found in favor of France.  See id. at 374.

[2]  See France v. Bernstein, 1:20-cv-01443 (M.D. Pa. Jan. 8, 2021), ECF Nos. 66–67, 75.

colleagues at CAA Sports, Jake Silver, was instrumental in setting up the signing event:

> Jake Silver is the person we have historically dealt with at CAA. Near the Christmas holidays in late December 2018, I had a telephone conversation with Jake Silver regarding such marketing events (such calls between us and various other parties are not unusual, but occur frequently in our ordinary course of business) . . . . [W]hile discussing the possibility of various signing events, Jake Silver mentioned that Mr. Golladay, a player for the Detroit Lions, might be interested in doing an autograph signing event, and asked us if we were interested.

(J.A. at 1833.)

The same dealer also produced screenshots of text messages, one of which showed a thread among the dealers discussing event logistics, including "[c]ar service for Kenny/mom/Todd CAA[,]" presumably referring to Golladay, his mother, and France. (J.A. at 1853.) In a subsequent deposition, the dealer admitted that Silver said that someone named Todd would be joining Golladay at the signing event. No one has suggested who else "Todd" from CAA could be except for Todd France. In fact, Bernstein received other evidence showing that France was scheduled to fly to Chicago the day before the event.

As discovery continued in October 2020, it became perfectly clear that France was involved in arranging the signing event. CAA Sports produced an email from Silver to France attaching a contract for the event for Golladay's signature, plus another email from France to Golladay attaching the same contract and asking him to sign and return it.

See France, 43 F.4th at 371, 374–75 (footnotes omitted). In accordance with the Third Circuit's judgment and mandate, this Court vacated the arbitration award on February 3, 2023. See France v. Bernstein, 1:20-cv-01443 (M.D. Pa. Feb. 3, 2023), ECF No. 79.

### B.    Second Arbitration Proceeding

On March 20, 2023, Bernstein initiated another grievance against France. (Doc. No. 1-7.) On September 28, 2023, after the parties briefed the issue, the Arbitrator issued a pre-hearing order on collateral estoppel finding that due to "the binding effect of the Appeals Court's clear holding, the issues of liability are final and will not be litigated again." (Doc. 1-11 at 6.) On October 16, 2023, a hearing was held only as to the issue of Bernstein's economic

4

damages.  (Doc. No. 1-18 (transcript of hearing).)  The parties agreed on the record to submit

post-hearing briefs to the Arbitrator.  (Id. at 180–82, Tr. 179:9–181:18.)  On November 9, 2023,

the Arbitrator sent a letter to the parties indicating that he "will consider awarding punitive

damages" and instructing the parties to brief the issue of punitive damages in their closing

briefs.  (Doc. No. 1-20.)  On December 28, 2023, the Arbitrator issued his award (hereafter the

"Arbitration Award" or the "Award") finding against France as follows: costs in the amount of

$135,846.47; damages in the amount of $225,000; and punitive damages in the amount of

$450,000, for a total of $810,846.47.  (Doc. No. 1-1 at 31.)  The Arbitrator denied Bernstein's

request for attorney's fees.  (Id.)

On March 21, 2024, France filed a complaint and petition to vacate or modify the

arbitration award in the Eastern District of Virginia.  (Doc. No. 1.)  In his complaint and petition,

France asserts that: the Arbitrator committed "misconduct in refusing to hear evidence pertinent

and material to the controversy and other misbehavior by which France's rights were prejudiced"

in violation of § 10(a)(3) of the Federal Arbitration Act ("FAA") (Count One); the Arbitrator

"exceeded his powers or so imperfectly executed them that a mutual, definite award was not

rendered on the issues submitted" in violation of § 10(a)(4) of the FAA (Count Two); the

Arbitrator violated §§ 8.01-581.010(3)–(4) of the Virginia Uniform Arbitration Act ("VUAA")

(Count Three); the Award "fails to draw its essence from the agreement or regulations and

because the arbitration process was fundamentally unfair" in violation of Section 301 of the

Labor Management Relations Act ("LMRA") (Count Four); and the Award was made in

manifest disregard of the law in violation of §§ 10(a)(3)–(4) of the FAA, Section 301 of the

LMRA, and common law (Count Five).  (Doc. No. 1 at 50–54.)  France subsequently filed his

motion to vacate or modify the arbitration award with a supporting brief on March 25, 2024. (Doc. Nos. 6–7.)

On April 5, 2024, Bernstein filed an emergency motion to stay both France's complaint and motion to vacate (Doc. Nos. 18–20) so that the Eastern District of Virginia could rule on his motion to transfer the action to the Middle District of Pennsylvania (Doc. Nos. 21–22). The motion was granted in part and denied in part insofar as certain deadlines were extended but the case itself was not stayed. (Doc. No. 24.) Bernstein filed an answer to France's complaint and petition, pleading affirmative defenses relating to France's ability to bring a claim for vacatur under the LMRA and the potential statute of limitations bar to France's claims. (Doc. No. 34 at 32.) The parties also briefed the motion to transfer. (Doc. Nos. 35–36.) Thereafter, on April 29, 2024, Bernstein filed a brief in opposition to the motion to vacate. (Doc. No. 37.) France filed a reply to Bernstein's brief. (Doc. No. 43.) On January 30, 2025, the Eastern District of Virginia granted Bernstein's motion to transfer and transferred the case to the Middle District of Pennsylvania. (Doc. Nos. 45–47.)

Thereafter, on March 3, 2025, the Court held a telephone status conference with the parties, at which France indicated his intention to file a motion for limited discovery as to the LMRA claims. (Doc. No. 54.) On April 2, 2025, France filed that discovery motion. (Doc. No. 56.) On April 4, 2025, Bernstein filed a motion for judgment on the pleadings as to Counts Four and Five concerning the LMRA claims. Having been fully briefed (Doc. Nos. 6–7, 37, 43, 56–59, 60, 65–67), the motions are ripe for disposition.

## II.    LEGAL STANDARDS

### A.    Motion for Judgment on the Pleadings

Federal Rule of Civil Procedure 12(c) provides that a party may move for judgment on the pleadings once the pleadings are closed.  See Fed. R. Civ. P. 12(c).  A Rule 12(c) motion is "designed to provide a means of disposing of cases when the material facts are not in dispute between the parties and a judgment on the merits can be achieved by focusing on the content of the competing pleadings."  See 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1367 (3d ed. 2020).  When assessing such a motion, "the court must 'view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party,' and may not grant the motion 'unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law.'"  See Wolfington v. Reconstructive Orthopaedic Assocs. II PC, 935 F.3d 187, 195 (3d Cir. 2019) (quoting In re Asbestos Prods. Liab. Litig. (No. VI), 822 F.3d 125, 133 n.6 (3d Cir. 2016)).

### B.    Review of Arbitration Award

The FAA limits a court's ability to vacate arbitration awards, as part of a comprehensive statutory scheme favoring arbitration.  See Hall St. Assocs. v. Mattel, Inc., 552 U.S. 576, 581 (2008).  Indeed, judicial review of an arbitration award under the FAA is "among the narrowest known to the law."  See Long John Silver's Rests., Inc. v. Cole, 514 F.3d 345, 349 (4th Cir. 2008).   Under the FAA, a court may vacate an arbitration award only if "(1) it 'was procured by corruption, fraud, or undue means;' (2) the arbitrator was 'partial[ ] or corrupt[ ];' (3) the arbitrator unjustifiably refused to postpone the hearing, refused to consider 'evidence pertinent and material to the controversy,' or engaged in any other 'misbehavior' that prejudiced the rights

of a party; or (4) the arbitrator 'exceeded [his or her] powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.'" See Roadway Package Sys., Inc. v. Kayser, 257 F.3d 287, 291 n.2 (3d Cir. 2001) (quoting 9 U.S.C. § 10), abrogated on other grounds by Hall St. Assoc., 552 U.S. 576 (2008).[3]  When reviewing an arbitration award, a district court does "not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts."  See Sherrock Bros., Inc. v. DaimlerChrysler Motors Co. LLC, 465 F. Supp. 2d 384, 391 (M.D. Pa. 2006), aff'd, 260 F. App'x 497 (3d Cir. 2008) (citing Tanoma Mining Co. v. Local Union No. 1269, 896 F.2d 745, 747 (3d Cir. 1990)).  Federal courts are therefore "extremely deferential" to arbitrators' awards and may vacate such awards "only under exceedingly narrow circumstances."  See Dluhos v. Strasberg, 321 F.3d 365, 370, 372 (3d Cir. 2003).

## III.    DISCUSSION

Before addressing France's motion to vacate or modify the Arbitration Award entered in Bernstein's favor in the arbitration captioned Bernstein v. France, NFLPA 23-CA-3 (Doc. No. 1-1), the Court addresses the outstanding motions— Bernstein's motion for judgment on the pleadings as to Counts Four and Five of France's complaint (Doc. No. 57) and France's motion to conduct limited discovery (Doc. No. 56).

### A.    Bernstein's Motion for Judgment on the Pleadings

#### 1.    Applicable Legal Standard

The LMRA applies to "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . , or between any

---

[3]  In addition to the FAA, France asserts a claim under the VUAA (Count Three).  (Doc. No. 1 at 52.)  The Court notes that the VUAA prescribes a virtually identical standard of review to the FAA.  See VA. CODE ANN. § 8.01-581.010.

such labor organizations."  See 29 U.S.C. § 185(a); see also Wooddell v. Int'l Bhd. of Elec.

Workers, Loc. 71, 502 U.S. 93, 98 (1991) (holding that "a suit properly brought under § 301 [of

the LMRA] must be a suit either for violation of a contract between an employer and a labor

organization representing employees in an industry affecting commerce or for violation of a

contract between such labor organizations").  "Section 301 [of the LMRA] governs claims

founded directly on rights created by collective-bargaining agreements, and also claims

'substantially dependent on analysis of a collective-bargaining agreement.'"  Caterpillar Inc. v.

Williams, 482 U.S. 386, 394 (1987) (citing Elec. Workers v. Hechler, 481 U.S. 851, 859 n.3

(1987) and Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 220 (1985)).  "Even where a

complaint does not expressly plead LMRA claims, courts usually consider it to state a claim

under § 301 if it pertains to violations of contracts between an employer and a labor

organization."  Teamsters Local 177 v. United Parcel Service, 966 F.3d 245, 250 (3d Cir. 2020)

(citations omitted).

### 2.     Arguments of the Parties

Bernstein argues that France's reliance on Section 301 of the LMRA is legally deficient

because neither of the parties are a signatory to a collective bargaining agreement ("CBA") and

Section 301 suits are confined to defendants who are signatories.  (Doc. No. 57 at 2–3.)  He

argues that the text of the LMRA does not provide the Court with subject matter jurisdiction to

vacate the Arbitrator's award.  (Doc. No. 58 at 6–7, 9.)  Bernstein posits that:

> [t]here is no suggestion in either the title or text of the LMRA that an individual
> such as France can bring a claim against another individual such as Bernstein
> simply because both of them agreed to be subject to regulations (here, the NFLPA
> Regulations Governing Contract Advisors) that were promulgated by a union (here,
> the NFLPA) in order to allow certain individuals the privilege of representing union
> members (i.e. NFL players).

(Id. at 6.)  On that basis, Bernstein requests that the Court enter judgment in his favor on Count Four in its entirety and on Count Five to the extent that it is based on Section 301 of the LMRA, and that the Court analyze the motion to vacate or modify under the FAA and the VUAA as a summary proceeding.  (Doc. Nos. 57 at 3; 58 at 1, 10.)

In response, France claims that he is an agent of the NFLPA and thus "has standing to challenge the award under the LMRA and federal common law as a direct and third-party beneficiary of each agent's labor contract (and mandatory agreement to arbitrate) with the [NFLPA] via the Regulations and the overarching collective bargaining agreement."  (Doc. No. 60 at 7.)  France also argues that Bernstein:

> fails to address whether his Rule 12(c) motion is being brought under Rule 12(b)(1) or Rule 12(b)(6), including whether he is making a facial or factual attack to subject matter jurisdiction.  Bernstein also does not specify whether he is challenging France's Article III standing or instead is attacking France's statutory standing under the LMRA.  On procedural grounds alone, Bernstein's motion can be denied. Regardless, France has both forms of standing and has alleged facts establishing subject matter jurisdiction arising under the LMRA and federal common law.  It is undisputed that subject matter diversity jurisdiction exists.

See (Doc. No. 60 at 10) (internal footnotes omitted).  He claims that the CBA, together with the Regulations, are labor contracts that promote the union's labor policies.  (Id. at 15.)[4]

### 3.    Whether the Court Should Grant Bernstein's Motion for Judgment on the Pleadings

At the outset, the Court notes that it is undisputed that the NFLPA is a "labor organization" within the meaning of 29 U.S.C. § 152(5), representing employees (NFL players)

---

[4]  France argues that Bernstein's motion is procedurally deficient (Doc. No. 60 at 10–12), but even assuming arguendo that the motion is procedurally deficient, the Court has a "continuing obligation to assess its subject matter jurisdiction," and "can dismiss a suit sua sponte for lack of subject matter jurisdiction at any stage in the proceeding," see Zambelli Fireworks Mfg. Co. v. Wood, 592 F.3d 412, 420 (3d Cir. 2010).

in an industry affecting commerce within the meaning of 29 U.S.C.§ 185(a).  France is correct

that, as Contract Advisors, they are bound by the Regulations in that they are permitted to

negotiate player contracts because the NFLPA "has delegated a portion of its exclusive

representational authority to them," (Doc. No. 60 at 14 (citing White v. Nat'l Football League,

92 F. Supp. 2d 918, 924 (D. Minn. 2000)).  Per the Regulations, France and Bernstein as

Contract Advisors are "[p]ersons serving or wishing to serve as the NFLPA's 'agent' pursuant to

the provisions of the [CBA]."  (Doc. No. 1-2 at 4.)

However, that fact does not render the parties subject to the LMRA.  As noted by

Bernstein, "France is conflating the NFLPA Regulations Governing Contract Advisors with the

actual collective bargaining agreement between the NFL and the NFLPA."  (Doc. No. 58 at 8.)

The Regulations and the CBA are separate documents, each with a different purpose—the

Regulations govern interactions between and among Contract Advisors and the Contract

Advisor's interactions with the NFL players that they represent (Doc. No. 1-2), whereas the CBA

governs the actions of the NFL players.  Contract Advisors are given a "portion of [the

NFLPA's] exclusive representational authority"[5] in the CBA and are thus subject to discipline

---

[5]  Section 1 of the Regulations provides as follows:

**A. Persons Subject to Regulations**
No person (other than a player representing himself) shall be permitted to conduct
individual contract negotiations on behalf of a player* and/or assist in or advise
with respect to such negotiations with NFL Clubs after the effective date of these
Regulations unless he/ she is (1) currently certified as a Contract Advisor pursuant
to these Regulations; (2) signs a Standard Representation Agreement with the
player (See Section 4; Appendix D); and (3) files a fully executed copy of the
Standard Representation Agreement with the NFLPA, along with any contract(s)
between the player and the Contract Advisor for other services to be provided.

**B. Activities Covered**
The activities of Contract Advisors which are governed by these Regulations
include: the providing of advice, counsel, information or assistance to players with

under the CBA.  See <u>White</u>, 92 F. Supp. 2d at 924.  In other words, although the Regulations and CBA are intertwined, they are not the same and do not provide standing for the instant parties under the LMRA.[6]

The Court notes that Bernstein's reply carefully addresses each case cited by France, distinguishing each from the facts at issue here.  <u>See generally</u> (Doc. Nos. 66, 66-1) (noting that none of the cases cited by France involve a dispute between two Contract Advisors, the NFLPA cases cited include the NFLPA as a party, and the other cases do not invoke the LMRA).  The Court agrees.  Not only does France fail to provide authority demonstrating that the LMRA is properly invoked under similar or analogous circumstances, but the cases relied on by France concerning the NFLPA and the LMRA are distinguishable from the instant case because, in those cases, the NFLPA was a party to the suit.  <u>See, e.g.</u>, <u>Poston v. Nat'l Football League Players Ass'n</u>, No. 02-cv-00871, 2002 WL 31190142, at *1 n.1 (E.D. Va. Aug. 6, 2002) (finding that federal question jurisdiction existed under the LRMA because the NFLPA, as a party to the suit, is a labor union); <u>Black v. Nat'l Football League Players Ass'n</u>, 87 F. Supp. 2d 1, 4 (D.D.C. 2000) (finding that federal question jurisdiction existed under the LRMA because the NFLPA, as

---

respect to negotiating their individual contracts with Clubs and/or thereafter in enforcing those contracts; the conduct of individual compensation negotiations with the Clubs on behalf of players; and any other activity or conduct which directly bears upon the Contract Advisor's integrity, competence or ability to properly represent individual NFL players and the NFLPA in individual contract negotiations, including the handling of player funds, providing tax counseling and preparation services, and providing financial advice and investment services to individual players.

(Doc. No. 1-2 at 5.)

[6] The Court also notes that France did not rely on the LMRA during the first arbitration confirmation proceeding.  See <u>France v. Bernstein</u>, 1:20-cv-01443 (M.D. Pa. Apr. 24, 2020), ECF No. 1.

a party to the suit, is a labor union); <u>Wooddell</u>, 502 U.S. at 98 (holding that "a suit properly brought under § 301 [of the LMRA] must be a suit either for violation of a contract between an employer and a labor organization representing employees in an industry affecting commerce or for violation of a contract between such labor organizations").

Further, France has not pointed to a single case in which the LMRA was applied to an arbitration solely between Contract Advisors. France cites to <u>Smith v. Evening News Ass'n</u>, 371 U.S. 195, 200 (1962), for the proposition that "non-signatories to CBA have standing to bring a LMRA section 301 claim and rejecting argument that [S]ection 301 claims are limited to 'only suits between unions and employers.'" <u>See</u> (Doc. No. 60 at 19). This case has no application here because France and Bernstein are of course not employed by the NFLPA and because the instant litigation involves claims asserted by France against a fellow agent, not the NFLPA. <u>See</u> <u>Loss v. Blankenship</u>, 673 F.2d 942, 947 n.3 (7th Cir. 1982) (clarifying that the "scope of the [Supreme] Court's decision [in <u>Smith</u>] was limited to the rights of employees to bring suit to enforce collective bargaining agreements," and that there is a distinction between non-party plaintiffs under the LMRA and suits against non-party defendants).

Upon careful review of the arguments of the parties and the relevant law, the Court will grant Bernstein's motion for judgment on the pleadings. Because the Court will grant Bernstein's motion for judgment on the pleadings and enter judgment in favor of Bernstein as to Count Four in its entirety and Count Five as it pertains to the LMRA, France's motion to conduct limited discovery in this matter (Doc. No. 56) will be denied as moot.[7] The Court now turns to

---

[7] France's motion for leave to take limited discovery is based on the Court exercising jurisdiction under the LMRA. <u>See</u> (Doc. No. 59 at 11–12). Because the Court will grant Bernstein's motion for judgment on the pleadings as to France's LMRA claims, France's motion for leave to take limited discovery is moot. Even assuming <u>arguendo</u> that the LMRA was applicable to the current action, it would not automatically entitle France to take limited

France's motion to vacate or modify the arbitration award, and will analyze the motion under the FAA.

### B.    France's Motion to Vacate or Modify the Arbitration Award

#### 1.    Applicable Legal Standard

As discussed <u>supra</u>, a court may vacate an arbitration award under the FAA only if "(1) it 'was procured by corruption, fraud, or undue means;' (2) the arbitrator was 'partial[ ] or corrupt[ ];' (3) the arbitrator unjustifiably refused to postpone the hearing, refused to consider 'evidence pertinent and material to the controversy,' or engaged in any other 'misbehavior' that prejudiced the rights of a party; or (4) the arbitrator 'exceeded [his or her] powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.'"[8] <u>See</u> <u>Roadway Package Sys.</u>, 257 F.3d at 291 n.2 (quoting 9 U.S.C. § 10), <u>abrogated on other grounds by</u> <u>Hall St. Assoc.</u>, 552 U.S. 576 (2008).

Vacatur of an arbitration award under Section 10(a)(3) is appropriate only where the arbitrator committed actual "misconduct . . . in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced." <u>See</u> 9 U.S.C. § 10(a)(3).  In order for a court to grant vacatur, the arbitrator's "error must be one that is not simply an error of law, but [one] which so affects the rights of a party that it may be said that he was deprived of a fair hearing." <u>See</u> <u>Newark Stereotypers' Union No. 18 v. Newark Morning Ledger Co.</u>, 397 F.2d 594, 599 (3d Cir. 1968)).

---

discovery.  <u>See</u> <u>PG Publ'g Inc. v. Newspaper Guild of Pittsburgh</u>, 19 F.4th 308, 314 (3d Cir. 2021) (stating that "many LMRA Section 301 actions to vacate can be decided as a matter of law on the pleadings").

[8]  As noted <u>supra</u> at note 3, the VUAA prescribes a virtually identical standard of review to the FAA.  <u>See</u> VA. CODE ANN. § 8.01-581.010.

A district court may vacate an arbitration award under Section 10(a)(4) of the FAA if "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." See 9 U.S.C. § 10(a)(4). A party seeking relief under this provision "bears a heavy burden." See Oxford Health Plans LLC v. Sutter, 569 U.S. 564, 569 (2013). Arbitrators "exceed[ ] their power" if they issue an "irrational" decision for which there is "absolutely no support at all in the record justifying the arbitrator's determinations." See Ario v. Underwriting Members of Syndicate 53 at Lloyds for 1998 Year of Acct., 618 F.3d 277, 295 (3d Cir. 2010), as amended (Dec. 7, 2010) (citations omitted).

### 2.    Arguments of the Parties

France asks the Court to vacate the Arbitration Award in its entirety and remand the matter "with instructions to refer the underlying arbitral dispute to a new arbitrator for a full and fair hearing on the merits of the underlying dispute," or in the alternative, he requests that the Court vacate the Arbitration Award in part or modify it to strike the portion of the Award awarding punitive damages. (Doc. No. 6.) France argues that this is an exceptional case in which an arbitration award must be vacated because the Arbitrator failed to provide the parties with a full and fair hearing. (Doc. No. 7 at 1.) France claims that the Arbitrator committed "at least two prejudicial infractions" that were in "manifest disregard of the law." (Id. at 2, 28–30.) First, he claims that the Arbitrator erred because he "blindly accepted the 'binding effect of the Appeals Court's clear holding' of fraud for FAA vacatur purposes and jumped to misguided conclusions before the arbitral 'do-over' hearing," and that the Arbitrator "forbade the introduction of any evidence from France relating to liability issues at the second arbitration." (Id. at 3.) Second, France argues that the Arbitrator exceeded his limited authority under the

Regulations "by deciding an issue he had no power to consider: whether punitive damages may be awarded in Section 5 disputes between rival agents," specifically after the Arbitrator had previously stated that punitive damages would not be awarded and when there is "[b]inding NFLPA arbitral precedent—from Arbitrator Kaplan no less."  (Id. at 4.)  France claims that, in an earlier NFLPA arbitration captioned Wasielewski et al. v. Simms & Recchion, NFLPA 18-CA-3 (hereafter "Wasielewski") (Doc. No. 1-23), the Arbitrator stated that the Regulations "make no provision for punitive damages," and that on this basis, France claims that the Arbitrator's 2018 decision in an entirely unrelated case represents the "law of the shop."  See (Doc. No. 7 at 25) (citing Trailways Lines, Inc. v. Trailways, Inc. Joint Council, 807 F.2d 1416, 1426 (8th Cir. 1986)).

In response, Bernstein maintains that the Arbitrator did not deny France a fundamentally fair hearing or act in manifest disregard of the law by giving preclusive effect to the Third Circuit's decision.  (Doc. No. 37 at 7–24.)  Bernstein argues that the punitive damages award is well-founded because it does not violate the Regulations (id. at 24–26) and the Arbitrator's prior decision in Wasielewski (Doc. No. 1-23) is not binding precedent (Doc. No. 37 at 30).

### 3.    Whether the Court Should Vacate or Modify the Arbitration Award

### a.    Arbitrator's Application of Collateral Estoppel

The Court first addresses France's argument that the Arbitrator erred in finding him in violation of the Regulations based on the Third Circuit's findings and without conducting a full hearing on liability.  He claims that because discovery was ongoing in Clarity, additional evidence that would refute the Third Circuit's finding of fraud and perjurious testimony was available but disallowed by the Arbitrator.  He argues, pursuant to Section 10(a)(3) of the FAA, the Arbitrator's decision to grant preclusive effect to the Third Circuit's precedential decision

that vacated the arbitration decision favorable to him was "fundamentally unfair." (Doc. No. 7 at 5.) Under these circumstances, France argues that this Court owes "no deference" to the Arbitrator because he "failed to provide the parties with a full and fair hearing." (Id.)

An arbitrator can decide what preclusive effect is to be given to a prior judicial action. See Beck v. Reliance Steel Prods. Co., 860 F.2d 576, 581 (3d Cir. 1988); see also Sherrock Bros., 465 F. Supp. 2d at 390 (finding that an arbitration panel properly considered, as a "threshold question of arbitrability," whether claims were precluded by prior decisions"). In affirming this Court's decision in Sherrock Bros, the Third Circuit stated that "[t]he very rationale behind the doctrines of res judicata and collateral estoppel is to preclude the relitigation of claims and issues that were already decided in an earlier action," and that the disposition of the arbitration was "based on legal doctrines that were resolved on written submission." See Sherrock Bros., Inc. v. DaimlerChrysler Motors Co., LLC, 260 F. App'x 497, 502 (3d Cir. 2008) (unpublished).[9] Additionally, "the manifest disregard standard requires more than legal error," and an arbitrator's decision "'must fly in the face of clearly established legal precedent,' such as where an arbitrator 'appreciates the existence of a clearly governing legal principle but decides to ignore or pay no attention to it.'" See Whitehead v. Pullman Grp., LLC, 811 F.3d 116, 121 (3d Cir. 2016) (internal citations omitted). The Third Circuit described this standard as "extremely deferential." See id.

Here, the Arbitrator gave the parties the opportunity to brief the application of collateral estoppel (Doc. Nos. 1-9, 1-10) prior to the issuance of his pre-hearing order (Doc. No. 1-11).

---

[9]  The Third Circuit has acknowledged that its non-precedential opinions ("NPOs") may nonetheless contain persuasive reasoning. See New Jersey, Dep't of Treasury, Div. of Inv. v. Fuld, 604 F.3d 816, 823 (3d Cir. 2010) (noting that an NPO is "as persuasive as its reasoning"); see also Drinker v. Colonial Sch. Dist., 78 F.3d 859, 864 n.12 (3d Cir. 1996) (following an NPO based on "factual similarity" and "look[ing] to the [NPO] as a paradigm of the legal analysis").

The parties also provided exhibits, including deposition transcripts and the opposing party's responses to those transcripts with their briefs.  <u>See</u> (Doc. Nos. 1-8, 1-9, 1-10).  In his decision applying collateral estoppel, the Arbitrator considered the previous two-day hearing in the first arbitration proceeding, the Third Circuit's decision, and the evidence and briefing provided by the parties during the instant arbitration proceeding, which was within his discretion and power as an arbitrator.  <u>See</u> <u>Sherrock Bros</u>, 465 F. Supp. 2d at 390 (confirming the arbitration panel's decision to give preclusive effect to prior court decision).  The Arbitrator then turned to Bernstein's claim for damages, heard evidence on that issue, and gave full consideration to France's argument that Bernstein failed to prove that he was entitled to receive compensatory damages based on the $40,000,000 contract ultimately negotiated on Golladay's behalf.  (Doc. No. 1-1 at 21–23.)  Even after finding a "strong likelihood" that the loss of Golladay as a client impacted Bernstein's reputation and affected his ability to attract "high value" clients, the Arbitrator awarded merely $225,000 in compensatory damages, all based on France's evidence, rejecting Bernstein's $1,213,676.46 claim.  (<u>Id.</u> at 23.)

France has failed to demonstrate that vacatur is proper because he was denied a fundamentally fair hearing based on the Arbitrator's application of collateral estoppel.  As noted <u>supra</u>, arbitration awards are generally presumed valid, review is "extremely deferential," and vacatur is appropriate only in "exceedingly narrow" circumstances.  <u>See</u> <u>Dluhos</u>, 321 F.3d at 370.  Further, even where error exists, the Court's role in reviewing the outcome of arbitration proceedings "is not to correct factual or legal errors made by an arbitrator."  <u>See</u> <u>Major League Umpires Ass'n v. Am. League of Pro. Baseball Clubs</u>, 357 F.3d 272, 279 (3d Cir. 2004).  Rather, where the parties have agreed to submit their claims to arbitration, "it is the arbitrator's view of the facts . . . that they have agreed to accept."  <u>See</u> <u>Tanoma Mining Co. v. Loc. Union No. 1269,</u>

United Mine Workers of Am., 896 F.2d 745, 747 (3d Cir. 1990); see also Brentwood Med. Assocs. v. United Mine Workers of Am., 396 F.3d 237, 241 (3d Cir. 2005), as amended (Mar. 17, 2005) (stating that "it is [the Court's] duty to resist the urge to conduct de novo review of the award on the merits"); Dluhos, 321 F.3d at 369 (concluding that "this Court has essentially concluded that the essence of arbitration . . . is that, when the parties agree to submit their disputes to it, they have agreed to arbitrate these disputes through to completion, i.e. to an award made by a third-party arbitrator" (internal citation omitted)).  The benefits of arbitration, such as expedited resolution of claims, decreased fees, and the opportunity to have claims evaluated by industry experts, "do not come without risk, and 'the possibility of receiving inconsistent or incorrect rulings without meaningful appellate review of the merits is one of the risks such parties must accept when they choose arbitration over litigation.'"  See Akers Nat. Roll Co. v. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, 712 F.3d 155, 161 (3d Cir. 2013) (citing Major League Umpires Ass'n, 357 F.3d at 289).  It is well-established that, having accepted the risks associated with arbitration, parties are not entitled to a second bite at the apple from the federal courts to avoid the results of an arbitration proceeding because they received an unfavorable outcome.  See id.  While France may take issue with the Third Circuit's resolution of the last arbitration appeal by finding that it was procured through fraud and was subject to vacatur, it does not follow that the Arbitrator erred by giving the finding preclusive effect.

Even assuming arguendo that the Court was convinced that the Arbitrator committed an error of law by giving preclusive effect to the Third Circuit's decision, "vacatur would still not be appropriate" because the Court does not review an arbitration for legal error or vacate an award for legal error.  See Sherrock Bros., 465 F. Supp. 2d at 491.  Therefore, the Court finds

that France's argument concerning the Arbitrator's application of collateral estoppel does not provide for vacating the Award.  The Court turns to France's argument regarding the imposition of punitive damages.

### b.     Arbitrator's Imposition of Punitive Damages

Turning to Bernstein's claim for punitive damages, the Arbitrator found France's violations to be "willful and flagrant," in "bad faith," and "outside the bounds of lawful behavior."  (Doc. No. 1-1 at 27–29.)  Based on these findings, he assessed punitive damages at two (2) times the compensatory amount, or $450,000, rejecting Bernstein's demand for a multiplier of eight (8).  (Id. at 29–30.)  France argues that no punitive damages are authorized under Section 10(a)(4) of the FAA.  As the United States Supreme Court explained in affirming the Third Circuit's decision in Sutter v. Oxford Health Plans LLC, 675 F.3d 215 (3d Cir. 2012):

> A party seeking relief under [§ 10(a)(4)] bears a heavy burden. It is not enough to show that the arbitrator committed an error—or even a serious error. Because the parties bargained for the arbitrator's construction of their agreement, an arbitral decision even arguably construing or applying the contract must stand, regardless of a court's view of its (de)merits.  Only if the arbitrator acts outside the scope of his contractually delegated authority—issuing an award that simply reflects his own notions of economic justice rather than drawing its essence from the contract— may a court overturn his determination.  So the sole question for us is whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong.

See Oxford Health Plans LLC, 569 U.S. at 569 (internal citations and quotation marks omitted). An award is "irrational" if "the award fails to draw its essence from the agreement and cannot be rationally derived from the agreement, or [] the record contains no support for the arbitrator's award."  See Verizon Pa. LLC v. Commc'ns Workers of Am., 13 F.4th 300, 306 (3d Cir. 2021).[10]  Although "[o]ther circuits have created a presumption that punitive damages do not

---

[10]  In a more recent case, the Third Circuit stated that:

draw their essence from a CBA absent an explicit punitive-damage provision[,]" the Third

Circuit has not decided "whether to adopt that presumption." See Verizon, 13 F.4th at 313

n.61.[11]

> Simply put, "we must enforce an arbitration award if it is based on an arguable
> interpretation of" the contract. The terms of an award may not be revised "unless
> they are completely irrational." As we have explained, "[s]o deferential is the
> 'irrationality' standard under the FAA that we 'may not overrule an
> arbitrator simply because [we] disagree . . . [T]here must be absolutely no support
> at all in the record justifying the arbitrator's determinations for a court to deny
> enforcement of an award.'"

See Caputo v. Wells Fargo Advisors, LLC, No. 20-3059, 2022 WL 1449176, at *4 (3d Cir. May
9, 2022) (unpublished) (internal citations omitted). As noted supra at note 9, the Third Circuit
has acknowledged that its NPOs may nonetheless contain persuasive reasoning. See Fuld, 604
F.3d at 823 (noting that an NPO is "as persuasive as its reasoning"); see also Drinker, 78 F.3d at
864 n.12 (following an NPO based on "factual similarity" and "look[ing] to the [NPO] as a
paradigm of the legal analysis").

[11] The Court notes, as did the Eastern District of Virginia (Doc. No. 46 at 13), that France
appears to have filed the motion in the Eastern District of Virginia originally to avoid Third
Circuit case law regarding punitive damages, arguing that transfer to this Court would "subject
France to prejudice resulting from a possible difference in applicable Fourth Circuit and Third
Circuit law concerning the vacatur of punitive damages," (Doc. No. 35 at 26). Because this case
was transferred to this Court under 28 U.S.C. § 1404 and this matter concerns a question of
federal law (the FAA), the Court applies the law of the transferee court—this Court. See Kutty
v. SAP Am., Inc., No. 19-cv-05251, 2020 WL 670446, at *3 (E.D. Pa. Feb. 10, 2020) (stating
that "transferred federal claims [under § 1404(a)] are governed by federal law as interpreted by
the Third Circuit" and citing In re Korean Air Lines Disaster, 829 F.2d 1171, 1176 (D.C. Cir.
1987) (Ginsburg, J.), aff'd 490 U.S. 122 (1989) (stating that "[b]inding precedent [for federal
courts] is set only by the Supreme Court, and for the district courts within a circuit, only by the
court of appeals for that circuit")); Jeffrey L. Rensberger, The Metasplit: The Law Applied After
Transfer in Federal Question Cases, 5 WIS. L. REV. 847, 858–61, 867 (2018) (stating that "[f]or
cases transferred under either § 1404 or § 1407, the most commonly encountered rule is to apply
the law of the transferee court" because federal law is unitary). In his article, Rensberger
concludes that:

> because federal law is unitary, not variegated, the principle of venue privilege is
> inapplicable. No litigant has a right to a particular interpretation of federal law, only
> to the correct interpretation of it. And so, since each court is competent for itself to
> decide the matter, the transferee is not only free to apply its own understanding of
> the federal law issue, it is duty bound to do so.

See Rensberger, The Metasplit, 5 WIS. L. REV. at 868.

Here, the NFLPA Regulations are silent on the availability of punitive damages for violations of the Regulations.  See generally (Doc. No. 1-2 at 15–21).  The Regulations do provide that "[i]f the Arbitrator grants a money award, it shall be paid within ten (10) days."  (Id. at 17.)  The parties, when committing to arbitration, are "bound by the terms of [their] bargain."  See Whitehead, 811 F.3d at 121.  In the absence of a presumption against punitive damages in the Third Circuit, see Verizon, 13 F.4th at 313 n.61, the Court finds that France fails to demonstrate that the Arbitrator "committed an error—or even a serious error."  See Oxford Health Plans LLC, 569 U.S. at 569.  The Arbitrator's decision was not "irrational" because: he noted that this matter concerned fraud that is "a matter of first impression," (Doc. No. 1-20); permitted the parties to present at multiple days of hearings; permitted the parties to brief the availability of punitive damages before rendering his final decision (Doc. Nos. 1-21, 1-24, 1-25); and relied on the record before him in the two arbitration proceedings.  See Verizon, 13 F.4th at 306 (stating that an award is "irrational" if "the award fails to draw its essence from the agreement and cannot be rationally derived from the agreement, or that the record contains no support for the arbitrator's award"); see also Brentwood Med. Assocs., 396 F.3d at 243 (upholding an arbitration award despite the arbitrator's reliance on language not found in the relevant agreement "because there is sufficient substance in the remainder of the discussion to pass the minimum rationality threshold").  Additionally, France has not shown that the Arbitrator did not make a good faith attempt to interpret the Regulations and the CBA in this matter of first impression.  See Sutter, 675 F.3d at 220 (holding that the arbitrator's role is to "interpret and enforce a contract," and "[w]hen he makes a good faith attempt to do so, even serious errors of law or fact will not subject his award to vacatur" (internal citation omitted)).

Even assuming <u>arguendo</u> that the Arbitrator "committed an error—or even a serious error" in his interpretation of the CBA and Regulations, <u>see</u> <u>Oxford Health Plans LLC</u>, 569 U.S. at 569, the Court would not vacate the decision because the court "'may not review the merits of [an arbitration] award,' even in the case of serious legal error," <u>see</u> <u>QAD, Inc. v. Block & Co.</u>, No. 21-mc-00370, 2022 WL 1211302, at *3 (D. Del. Apr. 25, 2022) (quoting <u>Verizon</u>, 13 F.4th at 306); <u>Whitehead</u>, 811 F.2d at 120–21 (stating that "the manifest disregard standard requires more than legal error" and that the error must be "not simply an error of law, but [one] which so affects the rights of a party that it may be said that he was deprived of a fair hearing"); <u>Sutter</u>, 675 F.3d at 220 (holding that "[w]hen he makes a good faith attempt to do so, even serious errors of law or fact will not subject [the arbitrator's] award to vacatur" (internal citation omitted)).

Further, as to France's reliance on <u>Wasielewski</u> for the proposition "that punitive damages are not an authorized form of recovery" in this type of dispute (Doc. No. 7 at 29), a prior decision of an arbitrator is not considered binding precedent.  <u>See</u> <u>Butler Armco Indep. Union v. Armco, Inc.</u>, 701 F.2d 253, 255 (3d Cir. 1981) (stating that "absent contractual language to the contrary, one arbitrator's interpretation of a collective bargaining agreement is not binding on a subsequent arbitrator"); <u>see also</u> <u>Hotel Ass'n of Washington D.C., Inc. v. Hotel & Rest. Employees Union, Loc. 25</u>, 963 F.2d 388, 390 (D.C. Cir. 1992) (stating that "where the agreement is silent, the arbitrator may decline to follow arbitral precedent when his judgment is that earlier decisions are erroneous" (internal quotation marks omitted)).  Additionally, the decision in <u>Wasielewski</u> concerned a different section of the Regulations than the instant dispute and did not involve fraud in an arbitration proceeding.  <u>Compare</u> (Doc. No. 1-1 with Doc. No. 1-23).  The Arbitrator's decision addressed peculiarly unique factual and legal circumstances that were appropriately addressed in his decision.  For all of the foregoing reasons, the Court finds

France's punitive damages argument unavailing.  Accordingly, the Court will deny France's motion to vacate the Arbitration Award.

**IV.    CONCLUSION**

In light of the foregoing, the Court will grant Bernstein's motion for judgment on the pleadings (Doc. No. 57), deny France's motion to conduct limited discovery (Doc. No. 56), and deny France's motion to vacate or modify the arbitrator's award (Doc. No. 6).  An appropriate Order follows.